UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNKECHAUGE INDIAN NATION,

         Plaintiff,

  v.                  Decision and Order
                      10-CV-711A

DAVID PATERSON, Governor of the
State of New York, JAMIE WOODWARD,
Acting Commissioner, New York State
Department of Taxation and Finance,
WILLIAM COMISKEY, Deputy
Commissioner, Office of Tax Enforcement,
New York State Department of Taxation and
Finance, JOHN MELVILLE, Acting
Superintendent, New York State Police, each
in his or her official capacity,

         Defendants.

---

ST. REGIS MOHAWK TRIBE,

         Plaintiff,

  v.                  Decision and Order
                      10-CV-811A

DAVID PATERSON, Governor of the
State of New York, JAMIE WOODWARD,
Acting Commissioner, New York State
Department of Taxation and Finance,
WILLIAM COMISKEY, Deputy
Commissioner, Office of Tax Enforcement,
New York State Department of Taxation and
Finance, JOHN MELVILLE, Acting
Superintendent, New York State Police, each
in his or her official capacity,

         Defendants.

---

# INTRODUCTION

Currently before this Court are motions by the St. Regis Mohawk Tribe ("Mohawk Tribe" or "Tribe") and the Unkechauge Indian Nation ("Unkechauge Nation" or "Nation") for a preliminary injunction enjoining the implementation of certain amendments to the New York State tax law relating to the taxation of cigarettes sold by reservation retailers. In addition, the Unkechauge Nation requests that this Court order the defendants to participate in court-ordered mediation. Defendants oppose both motions and seek to opt out of this Court's mediation program.

For the reasons stated, the Court: (1) denies the motions for a preliminary injunction; (2) grants a stay pending appeal; and (3) denies the mediation-related motions without prejudice to renew after appeal.

# BACKGROUND

## A. St. Regis Mohawk Tribe

The St. Regis Mohawk Tribe is a federally-recognized Indian tribe located in northern New York, along the St. Lawrence River and the Canadian border. The Tribe's current reservation constitutes 14,000 acres spanning Franklin and St. Lawrence Counties. There are currently 141 registered tribal businesses, 30 of which are cigarette retailers that employ 417 local residents.

The Tribe has adopted a regulatory system to control cigarette prices while generating income to pay for essential government services. Tobacco retailers must be tribal members licensed by the Mohawk Tribe. All cigarettes sold by licensed retailers must bear a tribal tax stamp. The cost of the stamp varies depending on the tobacco

product. The Tribe has also enacted legislation that requires a certain markup over invoiced cost per carton of tobacco product.  The failure to abide by this minimum pricing regime can result in fines or suspensions of the offender's license to do business on the reservation.  Tribal regulations also prohibit internet sales and tobacco sales to minors.

The Tribe has established a compliance department that is responsible for enforcement of the tobacco regulations.  The compliance department consists of four employees who assess and collect fees associated with taxes, fines and penalties.  The Tribe does not currently regulate transactions between the reservation retailers and state wholesalers.  That relationship is strictly market-based.  Nor does the Tribe currently regulate transactions between retailers and consumers. The Tribe's interest is limited to ensuring that cigarettes sold by reservation retailers bear a tribal stamp and are sold at a minimum price.  In 2008, the Tribe collected $2 million in fees from sales of tobacco products which were used by the Tribe to support governmental programs and services.

**B.** **Unkechauge Indian Nation**

The Unkechauge Nation is a sovereign nation of Indians residing on a 55-acre parcel of land on eastern Long Island, New York.  The Nation is governed by a Tribal Council.  The Tribal Council regulates the tobacco trade through a licensing regime and by Tribal Resolutions.  Before opening a tobacco retail business, Unkechauge Nation members must first obtain a license from the Tribal Counsel.  Additionally, the Unkechauge Nation requires that any wholesaler doing business with tribal retailers

also obtain a license to do so from the Tribal Council. The Nation's sole economic industry is retail tobacco sales. Like the Mohawk Tribe, the Unkechauge Nation levies its own tribal tax on cigarettes sold by Nation retailers. The Unkechauge levies a $1.00 per carton tribal tax. According to the Nation, there is considerable demand for their cigarettes because that $1.00 per carton tax pales in comparison to the $4.35 per pack New York State cigarette tax. The Nation notes that New York City levies its own $1.50 per pack tax, which provides New York metropolitan residents with an incentive to travel to the reservation to avoid paying City and State cigarette taxes.

**C.      2010 New York Tax Law Amendments**

The background and history of New York's effort to tax reservation tobacco retailers and the 2010 New York tax law amendments is set forth in this Court's decision in *Seneca Nation of Indians v. Paterson*, Dkt. No. 10-cv-687A, at Item 87, 2010 WL 4027796 (Oct. 14, 2010) (hereinafter "*Seneca Nation*" decision), denying a similar motion for a preliminary injunction made by the Seneca Nation of Indians and the Cayuga Indian Nation. Familiarity with the *Seneca Nation* decision and with the new tax scheme is assumed. Briefly, on June 21, 2010, the New York Legislature amended N.Y. Tax Law § 471 and § 471-e. The amendments increase the cigarette tax from $2.75 to $4.35 per pack. N.Y. Tax Law § 471(1). The following day, on June 22, 2010, the New York State Department of Taxation and Finance adopted an "emergency rule" to implement the amendments. *See* 20 N.Y.C.R.R. § 74.6. Together, the 2010 amendments and the emergency rule (collectively referred to herein as the "tax law amendments" or "amendments") seek to set forth a system for collecting taxes

4

on sales made by Indian cigarette retailers to nonmembers while at the same time attempting to balance the right of Indian members to obtain cigarettes tax free for their use and enjoyment on reservation territory. It is the validity of those tax law amendments that is at issue in this motion.

The amendments contemplate two alternative statutory mechanisms by which Indian nations and their members may obtain a limited quantity of tax-exempt (albeit New York State tax stamped) cigarettes: (1) an "Indian tax exemption coupon system" and (2) a "prior approval" system.[1]  See N.Y. Tax Law § 471(1). Both systems are discussed in detail in this Court's *Seneca Nation* decision. Nations desiring to participate in the coupon system are required to make an annual election to participate by August 15th of each year. Because the August 15th deadline for 2010 passed shortly after the amendments were enacted, the State defendants have represented to this Court that the State would entertain belated coupon election decisions by tribes for this first year. In the absence of an election to participate in the coupon system, the prior approval system governs by default.

Plaintiffs seek to enjoin implementation of the amendments asserting that they impose an undue burden on the right of tribal sovereignty and, if permitted to take effect, the amendments will cause irreparable injury to their members. The State defendants oppose the motion for injunctive relief asserting that the majority of issues raised by the plaintiffs in this case have already been rejected by this Court in the

---

[1] A third alternative is also available whereby an Indian nation and the State enter into an agreement as to the distribution of tax-exempt cigarettes. Neither plaintiff has elected to pursue this option.

*Seneca Nation* case. As to arguments not already decided, the State defendants assert that the arguments lack merit.

**DISCUSSION**

I.  **Preliminary Injunction Standard**

As this Court has recently held in *Seneca Nation* and in *Red Earth, LLC v. United States*, 10-cv-530A, ___ F. Supp.2d ___, 2010 WL 3061103 (W.D.N.Y. July 30, 2010), injunctive relief is an extraordinary remedy that should not be granted unless the movant has made a clear showing that he is entitled to such relief. To obtain a preliminary injunction, the moving party must establish: (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *Id.* at *3 (citing *Monserrate v. New York State Senate,* 599 F.3d 148, 154 (2d Cir. 2010)). However, where, as here, the moving party is seeking to enjoin application of a governmental statute or regulation, the movant must demonstrate a "likelihood of success on the merits" to obtain injunctive relief. *Monserrate*, 599 F.3d at 154; *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60 (2d Cir. 2007); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006). Injunctive relief enjoining a governmental regulation cannot be obtained by meeting the lesser "sufficiently serious questions" and "balance of the hardships" standard. *Id*. Additionally, the movant must show that granting a preliminary injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, ___ U.S.___, 129 S.Ct. 365 (2008).

## II. Likelihood of Success on the Merits

To obtain the relief they seek, plaintiffs must demonstrate a likelihood of success on the merits of their claims. Plaintiffs assert that the tax law amendments impose an impermissible burden on their right of tribal sovereignty and will deny individual tribal members their right to obtain tax-free cigarettes. Many of the arguments raised by the plaintiffs are arguments that were raised in the *Seneca Nation* case and rejected by this Court. For example, plaintiffs argue that the coupon and prior approval systems impermissibly burden their right of sovereignty because they require tribes to become involved in the business of allocating tax-exempt cigarettes (in the case of the prior approval system) or allocating coupons (in the case of the coupon system). For the reasons stated in this Court's *Seneca Nation* decision, this Court finds that the prior approval system does not require the plaintiffs to become involved in the allocation of tax-exempt cigarettes. Tribes have the option of doing nothing and permitting the allocation of tax-exempt cigarettes to be governed by free-market forces.

Plaintiff Mohawk Tribe argues that even if the prior approval system does not impose an undue burden on the right of tribal sovereignty, the coupon system does do so and therefore the statute is invalid because the provisions are not severable. Assuming *arguendo* that the coupon system does impose an impermissible burden on the right of tribal sovereignty, the statue is not invalid. Tribes desiring to avoid that burden have the option to decline participating in the coupon system in favor of the prior approval system which, for the reasons stated in *Seneca Nation*, does not impose an impermissible burden. Contrary to the plaintiffs' position, the provisions are severable because the statute expressly contemplates that the two systems are mutually

exclusive. In any given year, a tribe can either participate in the coupon system or the prior approval system, but not both. If a tribe feels that the burden imposed under the coupon system is unacceptable, it has the option to avoid that burden completely by choosing the prior approval system. In other words, the fact that the statute provides the plaintiffs with the option to participate in a system (*i.e.,* the coupon system) that may impose a burden on the right of tribal sovereignty does not render the statute invalid where, as here, the statute also provides the tribes with an avenue to avoid that burden completely–the prior approval system. Because the statute provides a means for tribes to avoid any burden on their right to tribal sovereignty, the statue is valid.

Plaintiffs argue that the economic consequences that they will suffer under the tax law amendments will interfere with their ability to provide governmental services to their members. For example, the Unkechauge Nation asserts that tobacco retail sales represent the Nation's sole economic activity and if that industry is taken away, members will suffer dire economic consequences. However, as this Court noted in *Seneca Nation:*

> *Moe* and *Colville* make clear that the Nations' right to tribal self-government is not impeded by New York's decision to impose a tax-collection duty on sales by Indian retailers to nonmembers, even if that decision carries with it the inevitable consequence that the Nations' coffers will suffer as a result of lost cigarette sales. New York State can require reservation cigarette sellers to collect excise taxes on behalf of the State for sales made to nonmembers. *See also Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 513 (1991) ("[T]he doctrine of tribal sovereign immunity does not prevent a State from requiring Indian retailers doing business on tribal reservations to collect a state-imposed cigarette tax on their sales to nonmembers of the Tribe."); *California State Bd. of Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 12 (1985) (holding that where "the legal incidence of California's cigarette tax falls on the non-Indian consumers of cigarettes purchased from respondent's smoke shop, [the State has the right to] require [the smokeshop] to collect the tax on [the State's] behalf.").

8

Thus, there is no violation of tribal sovereignly merely because New York's tax law amendments will have adverse economic consequences for the tribes and their members. The tribes assert that the tax law amendments will provide New York with an interest-free loan, and that the prior approval system will encourage wholesalers to "hoard" the tax-free cigarettes, thereby depriving tribal members of the opportunity to obtain tax free cigarettes. Those argument are rejected for the reasons stated in the *Seneca Nation* decision.[2]

The Unkechague Nation argues that the tax law amendments are tantamount to a taking of its property in violation of the Fifth Amendment. The Nation argues that the tax law amendments will cause it to lose its $1.00 per carton tribal tax and that interference with the tribal tax amounts to a taking in violation of the Fifth Amendment. Additionally, the Nation argues that the prepayment obligation of the new tax amendments (*i.e.*, requiring the Nation's retailers to prepay the state tax imposed upon the non-members via a tax stamp) also amounts to a Fifth Amendment taking because it constitutes an "interest free" loan to the State. These arguments are the same arguments previously rejected by this Court in *Seneca Nation*, merely restated as Fifth Amendment claims. For the reasons previously stated in *Seneca Nation*, those argument are rejected.

The Mohawk Tribe argues that the State cannot impose any cigarette tax collection system on Indian tribes when it has not imposed a similar system on other tax-exempt entities, such as the U.S. military and diplomatic missions. The tax law

---

[2] The Court recognizes that another federal district court recently reached a different conclusion as to those same arguments, *see Oneida Indian Nation v. Paterson*, 10-cv-1071 (N.D.N.Y. Oct. 14, 2010) (Hurd, J.), but this Court disagrees with those conclusions for the reasons stated in *Seneca Nation*.

amendments specifically exclude taxes for "cigarettes sold to or by the United States of America or any of its agencies or instrumentalities," including the military. *See* 20 N.Y.C.R.R. § 76.2(a)(1). The regulations also exclude "[d]iplomatic missions and diplomatic personnel" from the cigarette tax. *Id.* § 76.4(a). The Mohawk Tribe argues that these provision violate the Equal Protection Clause because they impose a probable-demand limitation on Indian tribes but not other governmental entities.

To survive equal protection scrutiny, there must be a "rational basis" for the differential treatment. *See FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) (stating that a classification "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification"). Rational-basis review applies here because fundamental rights are not implicated. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439-40 (1985); *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007).

When legislation is reviewed for a rational basis, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws." *Gregory v. Ashcroft*, 501 U.S. 452, 470-71 (1991) (internal quotation marks omitted). The Supreme Court has stated that courts should "not overturn such a [law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979). Furthermore, the Supreme Court has emphasized that under rational basis review, legislatures are allowed to act incrementally: the Equal Protection Clause "does not compel . . . [l]egislatures to

10

prohibit all like evils, or none. A legislature may hit at an abuse which it has found, even though it has failed to strike at another." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 151 (1938). Rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam). For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded "a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). "A classification must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320.

The State has articulated a rational basis for the differential treatment. There is little dispute that millions of cartons of untaxed cigarettes are sold each year by tribal reservation retailers – well in excess of the number of cartons purchased solely by tribal members. The Tribe's own cigarette sales data supports that conclusion. The Supreme Court has recognized that States have a legitimate interest in taxing nonmembers who purchase cigarettes at reservation tobacco shops. *See Coleville*, 447 U.S. 161. The fact that most of the untaxed cigarettes sold in New York to non-exempt purchasers are sold by tribal retailers provides a rational basis for treating Indian tribes differently than other tax-exempt entities. Where, as here, there are plausible reasons for the governmental classification, this Court's inquiry is at an end. *See Beach Communications*, 508 U.S. at

11

313-14 ("Where there are 'plausible reasons' for Congress' action, 'our inquiry is at an end.'").  Therefore, the Mohawk Tribe is not likely to succeed on its equal protection claim.

## **CONCLUSION**

For the reasons stated herein and in this Court's *Seneca Nation* decision, the Court finds that plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims.[3]  As such, plaintiffs' motions for a preliminary injunction are denied.  Nevertheless, as this Court did in the *Seneca Nation* case, the Court finds it prudent to grant a stay pending appeal.  Plaintiffs have expressed their intent to appeal an adverse ruling.  Granting a stay pending appeal is consistent with the action taken by this Court in the *Seneca Nation* case, and will result in *all* Indian tribes in New York State being treated equally pending decision by the Second Circuit on the merits of their claims.  Absent a stay, the Court finds that plaintiffs will suffer irreparable injury.  *See Seneca Nation of Indians v. Paterson*, 10-cv-687A, at Item 88 (Oct. 14, 2010)(Decision and Order granting stay pending appeal).  The Court also finds that a stay pending appeal is in the public interest.  *See id.*  Finally, the Court finds that the mediation-related motions should be denied without prejudice pending resolution of plaintiffs' appeal.  It is doubtful that any court-ordered negotiations would be successful at this juncture in the litigation.

---

[3] Having failed to demonstrate a likelihood of success on the merits of their claims, analysis of irreparable injury and the public interest becomes moot.  *See Monserrate v. New York State Senate*, 599 F.3d 148, 154 and n. 3 (2d Cir. 2010) (finding that the plaintiff's failure to establish a likelihood of success on the merits mooted other concerns such as whether irreparable injury had been established and whether an injunction was in the public interest).

In sum, (1) plaintiffs' motions for a preliminary injunction are denied, (2) enforcement of the New York tax law amendments is stayed pending appeal, and (3) the motions for court-ordered mediation and to opt out of court-ordered mediation are denied without prejudice to renew after appeal.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: November 9, 2010